**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **United States of America,** | : | |
| **Plaintiff,** | : | **Case No. 2:25-CR-00164-003** |
| **v.** | : | **Judge Edmund A. Sargus, Jr.** |
| **Jennifer Blake,** | : | |
| **Defendant.** | : | |

**<u>DEFENDANT'S SENTENCING MEMORANDUM</u>**

Defendant Jennifer Blake "Defendant" by and through counsel, and hereby submits the following memorandum for the Court's consideration in imposing the sentence in this case. The Defendant asks the Court to consider the following information in applying the factors set forth in 18 USC §3553(a). Counsel for Defendant and Counsel for the Government have made objections to the Probation Officer's Presentence Report ("PSR").

**<u>MEMORANDUM IN SUPPORT</u>**

Defendant Jennifer Blake, through counsel, submits this Sentencing Memorandum to assist the Court in determining a sentence that achieves the overriding purposes of federal sentencing. 18 U.S.C. §3553 provides that in imposing a sentence in a criminal case, the Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes of paragraph (2) of that subsection.

The Defendant filed five (5) objections to the PSR: 1) Defendant objects to the Base Offense Level calculated in the PSR, 35, and asks the Court to accept the Base Offense Level of 32, as agreed upon by the parties pursuant to the Plea Agreement; 2) Defendant objects to the

cryptocurrency conversion of methamphetamine; 3) Defendant objects to the two level increase applied in paragraph 53 and 54 for distributing a controlled substance through mass-marketing by means of an interactive computer service; 4) Defendant objects to the two level increase applied in paragraph 55 and 56 for knowingly maintaining a premises for the purpose of manufacturing or distributing a controlled substance, including storage of a controlled substance for the purpose of distribution; and 5) Defendant objects to the non-application of a mitigating role reduction in paragraphs 59 through 61.

**A. <u>NATURE AND CIRCUMSTANCES OF THE OFFENSE</u>**

On October 2, 2025, Ms. Blake was charged in a Superseding Indictment wherein Count 1 alleges a violation of 21 U.S.C. §846 where Defendant conspired with Co-Defendants to distribute and possess with intent to distribute 500 grams or more of a mixture or substance containing methamphetamine, its salts, isomers, the salts of its isomers; 50 kilograms of marijuana; lysergic acid dimethylamine (LSD); dimethyltryptamine (DMT); mescalin; 3-4methylenedioxymethamphetamine (MDMA); cocaine; ketamine; alprazolam; clonazepam; and diazepam, in violation of 21 U.S.C. §§ 841(a), (b)(1)(A)(iii), (b)(1)(C), (b)(1)(D), (b)(1)(E), (b)(2). This offense occurred from January 2024 until October 2, 2025. Counts 2 and 4 allege violations of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii) and 18 U.S.C. §2 where Defendant and Co-Defendants distributed 50 grams or more of a substance containing methamphetamine. This offense occurred from March 12, 2025 until June 16, 2025. Count 3 alleges Defendant and Co-Defendants distributed cocaine and alprazolam in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), (b)(2), and 18 U.S.C. §2. This offense occurred on April 22, 2025. Count 5 alleges Defendant and Co-Defendants distributed 500 grams or more of a mixture containing methamphetamine in

violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), and 18 U.S.C. §2. This offense occurred on August 18, 2025. Additionally, the Indictment included a Forfeiture Allegation and Substitute Assets.

The Defendant on April 23, 2026 pled guilty to Count 1, pursuant to a Plea Agreement. On April 9, 2026 Jesse Wasson (001) and Amandra Heffelfinger (002) pled guilty to Count 1 of the Indictment. Amandra Heffelfinger (002) was sentenced to nineteen (19) months incarceration.

**B. HISTORY AND CHARACTER OF THE DEFENDANT**

**1. Mental and Emotional Health**

Ms. Blake was diagnosed with ADHD, but has been unable to take the commonly prescribed medications due to her heart condition. Ms. Blake's mental and emotional health has been significantly impacted through her life due to familial issues, bullying during her early education, sexual trauma, and health concerns. During High School, Ms. Blake began taking anti-depressants for both anxiety and depression, and has continued to use them intermittently through her life. Recently she was prescribed Wellbutrin, though halted the medication upon the discovery of her brain tumor. Ms. Blake historically has received mental heath services was undergoing treatment at the Alive clinic when she was arrested. In Spring of 2025 Ms. Blake took a leave of absence from her position as a school psychologist due to severe anxiety related to her cardiac condition and newly diagnosed brain tumor. Ms. Blake is currently prescribed hydroxyzine to treat her anxiety.

**2. Educational Background**

Ms. Blake's educational background began when she graduated from Dixon High School in Dixon, California in 2004. Afterwards, she enrolled at Sacramento City College and Los Rios Community College in Sacramento, California from 2004 to 2014, where she earned three associate degrees in humanities. Ms. Blake then earned her bachelor's degree in psychology and a minor in education from the University of California in Davis, California during 2014 to 2016. Ms. Blake was enrolled at University of Nevada Las Vegas from 2019 until 2022 where she earned a master's degree in school psychology as an Education Specialist. Ms. Blake hopes, upon her release form prison, to pursue a Ph.D. in neuropsychology.

**3. Employment History**

Ms. Blake's extensive employment history began while she was in high school while she worked at Cattleman's Restaurant and Subway. Next, she was employed at the Primate Center in Davis, California from 2005 until 2015, where she began in an entry-level position and eventually became a senior animal technician. She worked at the Primate Center full-time while also attending college full-time. In 2015, Ms. Blake worked unpaid as a research assistant at the University of California in Davis, California. During 2016, Ms. Blake worked as a client supervisor for market research as Elliot Benson Market Research. From May 2017 until July 2019, she worked at the San Antonio, Texas Biomedical Institute as a supervisor of a 10 person team doing medical and technical research on a marmoset colony. During 2020 until 2021, Ms. Blake worked at the University of Nevada Las Vegas's Health Center as a contact tracer. Afterwards, Ms. Blake began an internship as a school psychologist for the Clark County School District in Las Vegas, Nevada from 2021 to 2022. In August 2022, Ms. Blake worked as a school psychologist for the Eugene, Oregon, School District until she was arrested for the instant federal

offense. Ms. Blake worked in two schools providing services to students in kindergarten through fifth grade.

**4. Family**

Although Ms. Blake has struggled with family issues throughout her life, she has built a large community of supportive co-workers, friends, and others as shown through the various letters attached to this Memorandum.

Notably, Ms. Blake was raised primarily by her mother and did not have a relationship with her biological father. Ms. Blake noted that not having a father figure was difficult because it often made Ms. Blake feel like an outsider to both family and friends. Ms. Blake has four maternal siblings, all of which have struggled with addiction, except her sister Lisa. Both Ms. Blake and her sister Lisa describe their mother as controlling, and Ms. Blake noted her mother was verbally aggressive, emotionally unsupportive, and did not believe in showing weakness or sharing emotions.

During high school, Ms. Blake was 14 when she was touched inappropriately by her mother's live-in boyfriend. Shortly after, Ms. Blake was sexually assaulted by two 17-year-old boys at a party. Ms. Blake began drinking to cope with her trauma and by 15, Ms. Blake began dating a 24-year-old man who would sexually assault her regularly during their five-year relationship. Ms. Blake explained this boyfriend supplied her with alcohol and cocaine, and although she made attempts to leave, the man punched holes in the wall, yelled at her, and scared her into staying until she was 20, and left.

In her adult years, Ms. Blake began dating women, but Ms. Blake's mother did not accept this, degraded her, and their relationship became tumultuous. Ms. Blake's sister, Lisa, explained

that when their mother was diagnosed with leukemia, Ms. Blake was their mother's primary caretaker from 2014 to 2016. During this time, Ms. Blake and her sister, Lisa, attended to their mother at an acute care facility until additional medical complications left their mother dependent on a ventilator. Eventually, Ms. Blake's mother became comatose and in October of 2016, Ms. Blake and her siblings stood at their mother's bedside after making the difficult decision to stop medical intervention. Lisa explained this took a toll on Ms. Blake's mental and physical state, which worsened when Ms. Blake received her own brain tumor diagnosis.

Despite all the adversity Ms. Blake has faced, she managed to earn an extensive education, multiple high-level jobs, and create a community of friends and coworkers in her adult life, as shown by the letters of the support attached. The following is a summary of salient observations from the letters of support, that will be appended in full at the end of this Memorandum.

Defendant's Exhibit #2 Kathy Grewe, MD, FACC: (Letter Attached – June 11,2026)

"Jennifer Blake has a dilated aortic root…Over time this can cause the heart to enlarge, weaken, and eventually develop heart failure or rhythmic disturbances. Although medications may help manage symptoms or slow progression, they do not correct the underlying problem. Definitive treatment is surgical."

"Based on the information available to me she clearly required open-heart surgery. Because of the complexity of her ascending aortic anatomy, I believed that her care required a highly skilled surgeon…"

"I later learned that Ms. Blake had been incarcerated …However, regardless of the criminal charges, her underlying cardiac condition remains serious and unresolved."

"Ms. Blake continues to need open-heart surgery. Her aortic root may continue to enlarge over time, and once the aortic diameter reaches a critical threshold, there is increased risk of aortic rupture or dissection, both of which are life threatening surgical emergencies. I am concerned about whether she is receiving the level of cardiac monitoring and follow-up that this condition requires while in custody."

Defendant's Exhibit #7 Breeya Gottwald, MS, OTR/L – (Letter Attached – June 3, 2026)

"What is perhaps most remarkable about Jenn is the resilience she demonstrated in the face of serious personal health challenges. Jenn lives with a heart condition that requires ongoing monitoring and surgery, and she was diagnosed with a brain tumor. Despite these significant medical burdens, she continued to show up for her students with the same warmth, professionalism, and dedication as always."

Defendant's Exhibit #16 Patty Donnell – (Letter Attached – June 6,2026)

"When I learned about her guilty plea, I was extremely bewildered because this sounded nothing like the Jenn Blake that I know, worked with, and trusted. I'm not sure why she made the decision she did, but I know that her heart is good and that she is an excellent example of a caring and loving individual."

"I also believe that she learns from her mistakes. This I've learned after many, many conversations about life and the choices we make. She's an intelligent, caring person who I believe will grow and learn from her mistakes."

Defendant's Exhibit #15 Cindy Hamel – (Letter Attached – June 9, 2026)

"I have been a third-grade teacher…for over twenty years. I am writing this letter on behalf of Jen, whom I worked with for approximately three and a half years while she served as a school psychologist."

"In my experience, Jenn is a kind, compassionate, and empathetic person. She consistently demonstrated integrity, professionalism, and a sincere desire to help others."

"When I learned about Jenn's current situation, I was genuinely shocked. Based on the person I came to know during the years we worked together; the circumstances seemed completely out of character."

"While I understand the seriousness of the situation before the court, I believe it is important to consider the positive qualities Jenn has demonstrated throughout her life and career. She has made a meaningful difference in the lives of many students, families, and colleagues."

Defendant's Exhibit #10 Kim Konevich – Special Education Teacher - (Letter Attached)

"During the years we worked together, I witnessed firsthand her commitment to supporting students, families, colleagues, often going above and beyond what was required of her position."

"While I understand that Jen is facing serious legal matters, I believe the person I have come to know over the past three years is fundamentally compassionate, responsible, and committed to helping others. Based on my experiences with her, the circumstances of this case are inconsistent with the character she - demonstrated every day in our school community."

Defendant's Exhibit #7 Hannah Stamp – Special Education Teacher (Letter Attached)

"The charges against her do not reflect the kindhearted soul of Jenn, it reflects fear from the unknown about her medical standing. She reacted in a way that was not good, but I have full faith that she would never go back to any sort of crime when she is back in society."

Defendant's Exhibit #9 Alice Williamson – Title One Literacy and Dyslexia Specialist

"Chavez is a high poverty elementary school that receives Title One Funding to provide reading intervention for students with academic challenges related to poverty. One of the goals of the Title One program is to ensure that all students leave third grade proficient in reading."

"I estimate that over the last several years Jenn has helped over 100 students get the academic and social emotional help they need. She cared very much about the students at Chavez and worked extremely hard to advocate for any student that needed extra support to be successful."

"I miss working with Jenn every day. She is a dedicated advocate for students and shares my passion for helping them succeed in school."

Defendant's Exhibit #3 Debbie Miller, MS, MAT (Letter Attached – June 1, 2026)

"About two weeks before Christmas 2024, I watched and listened in my office to the video call with the brain surgeon telling Jenn that it could be cancer, and that he wanted to that get in there and take it out. He then proceeded to describe the craniotomy procedure in detail, emphasizing the fact that she might not even survive the surgery."

"I am certain that Jenn's mental health was completely derailed to the point of despair and desperation after that video call…After that call she shared with me that she was beginning

to think her life would be very short; and that the results of brain surgery, if she survived, would be life altering. She feared that she would not be the same person ever again. She remembered her mom's agonizing last weeks, and she feared the worst."

"To say that I was shocked and devastated by the news of Jenn's and Mandy's arrest would be an understatement. I was completely blindsided, as were all of her friends and family members. The behavior was so out of character from the person I know and love, that it defies explanation…However after many conversations with her sister, and other close friends, I came to believe that this huge life mistake was an anomaly."

"Your Honor, if anyone has the potential to be completely rehabilitated and become a productive member of society again, it is Jennifer Blake. I believe that the likelihood of her reoffending is zero. At her core she is an insightful, hardworking, caring person."

Defendant's Exhibit #12 Keidri Herring- (Letter Attached – June 5, 2026)

"[A] quality that has deeply impressed me is Jennifer's resilience. During the years I have known her, she has faced significant health challenges related to a serious heart condition. I have witnessed the uncertainty, fear, and physical difficulties that can accompany such circumstances. Yet despite those challenges she has continued to move forward with courage, determination, and gratitude for life. Rather than allowing her hardships to define her, she has remained focused on living life fully…"

"I fully understand and respect the seriousness of the matter before the Court and do not offer this letter to minimize the circumstances that have brought Jennifer before you. Rather, I hope to provide a fuller picture of the person I have known for nearly two decades—a person

who has devoted herself to helping others, mentoring those in need of guidance, and making a lasting positive impact on countless lives."

Defendant's Exhibit #8 Sara Morgan- (Letter Attached – May 30,2026)

"And now, the elephant in the room. Something I haven't shared with many people; I struggled with anger for a period of time after Jennifer's arrest. Though it is my trade and innate skill not to judge, I was incredulous when I heard the news. But the vulnerable part, I was weirdly hurt that I had absolutely no knowledge of ANY of this until the day after her sister contacted me about her arrest. I understand now that it was by design, Jennifer is someone who consistently prioritizes others above herself and in lying to me, she was protecting me."

**5. Acceptance of Responsibility and Genuine Remorse**

Ms. Blake has accepted responsibility for her actions and acknowledged the conduct leading to the present charges. She explained she met her co-defendant, Jesse Wasson in 2019 while living in Las Vegas, Nevada and they became friends. They remained in daily contact despite Ms. Blake's move to Oregon and Ms. Wasson's move to Colorado.

After having chest pain, Ms. Blake went to the emergency room in early 2024. After several follow-up appointments, the Doctors informed Ms. Blake she absolutely needed to have open heart surgery to repair an aortic root aneurysm and replace her aortic valve. Ms. Blake still has not undergone this heart surgery that is required to sustain her life. In February of 2024, Ms. Blake had a migraine and ended up in the emergency room again, where Doctors discovered Ms. Blake's brain tumor. Ms. Blake paid out of pocket to see a specialist who recommended a craniotomy following the pending open-heart surgery. Medical debt began to accumulate, and

Ms. Blake lost hope in her future and health. Ms. Blake wanted to ensure Ms. Heffelfinger could have financial security in the event of medical complications or death.

During this time, Ms. Wasson proposed a solution to Ms. Blake with her online drug business. While Ms. Blake believed the business was only for marijuana and mushrooms, later, Ms. Blake realized other drugs were involved. Ms. Blake regrettably remained in the business, packing shipments and ordering shipping supplies, for financial security.

Ms. Blake acknowledged that had she not accepted Wasson's recruitment, she would not be in this situation. Ms. Blake has expressed shame and embarrassment for her conduct, and deep regret for her wife who was also charged and faces imprisonment.

Ms. Blake has provided a letter (See Defendant's Exhibit #1) that provides details about her personal life, the medical concerns that shaped her conduct, her values, and job history. Ms. Blake details the trauma she faced while undergoing a near fatal cardiac emergency in 2014, the open-heart surgery that followed, witnessing her own mother's death shortly thereafter, and how she struggled to cope after. After her mother's death, Ms. Blake explains, "I never truly addressed the trauma of those experiences…I found my purpose in advocating for students with disabilities."

In November of 2024, when her mental health was at a breaking point, Ms. Blake was informed that her aortic aneurysm now met criteria for surgical intervention. This time, Ms. Blake spiraled into doing research about her own condition, and as her despair grew, Ms. Blake confided in her friend, Jesse. Ms. Blake lost her faith and gave into fear and doubt and felt crushed under the pressure of financial ruin and medical debt, which led to her involvement in the present case. Ms. Blake explains in her letter, "I understand the harm my actions caused. I

betrayed the trust of my family, my friends, my colleagues, my students, and the community I served. I also became part of the cycle of addiction that has devastated countless individuals and families. having personally witnessed the destruction addiction can cause within families, I should have known better. I am deeply ashamed that I became part of that harm." Her acceptance of responsibility and genuine remorse is palpable in her letter, showing why Ms. Blake is a good candidate for leniency in the present case.

**6. Criminal History**

Ms. Blake has no prior criminal record, aside from one arrest when she was 16, which was resolved through a juvenile diversion program. As such, Ms. Blake is placed in Criminal History Category I.

**C. SERIOUSNESS, DETERRENCE, AND PROTECTION OF THE PUBLIC**

As agreed upon by the parties pursuant to the Plea Agreement, Ms. Blake's total offense level is set at 32 with a Criminal History Category I. The Guideline range is 121 to 151 months. The alterations to this total offense level involve a two (2) level reduction for no prior criminal history, a two (2) level reduction for the applicable safety valve provision, a one (1) level reduction for timely notice, and a two (2) level reduction for acceptance of responsibility. This brings Ms. Blake's total offense level down to 25 including the applicable reductions. The Guideline range for a total offense level of 25 is 57 to 71 months.

**D. KINDS OF SENTENCES AVAILABLE, TREATMENT, AND EDUCATION**

The Defendant could benefit from counseling services or some involvement in a Residential Drug Assistance Program, should the Court determine the need for such assistance.

**E. GUIDELINE RANGE**

As stated above, the Guideline Range appropriate for Ms. Blake pursuant to the total offense level of 32, as agreed upon by the parties, in conjunction with appropriate adjustments, is 57 to 71 months. However, the Court is no longer bound by such a range and is free to consider other available options, *United States v. Booker*, 543 U.S. 220 (U.S. 2005). Should the Court find it appropriate, Ms. Blake requests the Court grant a sentence below the Guideline Range of 57 to 71 months.

**F. AVOID UNWARRANTED SENTENCING DISPARITIES**

Ms. Blake has no prior felony convictions but has involved herself in a serious crime. The Defense will defer to the Court.

**CONCLUSION**

The attachments include letters of support from friends, family, coworkers, and others. They speak so passionately from the heart for Ms. Blake that those most close to her could only write.

The Defendant requests that the Court take into consideration the information contained herein when determining a sentence that achieves the overriding purposes of federal sentencing.

Respectfully Submitted,

/s/ Brian J. Rigg
Brian J. Rigg (#0038805)
720 S. High St.
Columbus, Ohio 43206
(614) 425-0170
brigg@breezelineohio.net
Attorney for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on August 24, 2026, I electronically filled the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Jennifer Rausch
Assistant United States Attorney
303 Marconi Boulevard
Suite 200
Columbus, Ohio 43215
(614) 469-5715

/s/ Brian J. Rigg
Brian J. Rigg (0038805)